UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TITAN SUPPLY COMPANY and JOHN ZANDER, | Case No. 11-CV-3093 (PJS/TNL) |
| Plaintiff, | |
| v. | ORDER |
| THE CITY OF DUNDAS and JOHN McCARTHY, individually and in his official capacity as the City Administrator for the City of Dundas, | |
| Defendants. | |

Erick G. Kaardal, MOHRMAN & KAARDAL, P.A., for plaintiffs.

George C. Hoff, Kimberly B. Kozar, and David M. Quealy, HOFF, BARRY & KOZAR, P.A., for defendants.

This case arises out of a seemingly interminable land-use dispute between plaintiff Titan Supply Company ("Titan") and the City of Dundas ("the City"). In 1992, the City granted Titan a variance from a 35-foot height restriction found in a zoning ordinance so that Titan could erect silos up to 75 feet tall. During the ensuing 20 years, Titan and the City have had numerous disputes over Titan's on-again-off-again plans to build those silos. These disputes involve disagreements over the duration and the scope of the 1992 variance and disagreements over the meaning of various City ordinances and provisions in the building code. With the cooperation of all parties, these disputes could have been easily and quickly resolved by a state court. But Titan has decided to try to make a federal-law mountain out of this state-law molehill. Its 36-page, 215-paragraph second amended complaint brings claims against the City for, among other things, depriving Titan of procedural and substantive due process in violation of the Fourteenth

Amendment and retaliating against Titan officer John Zander in violation of the First Amendment.

This matter is before the Court on the parties' cross-motions for partial summary judgment.[1]  Plaintiffs also object to two nondispositive orders of Magistrate Judge Tony N. Leung, including an order denying plaintiffs' motion for leave to bring a *72*-page, *384*-paragraph *third* amended complaint.

The objections to Judge Leung's orders can be easily disposed of:  Those orders are neither clearly erroneous nor contrary to law, and thus they are affirmed.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  As for the summary-judgment motions, plaintiffs' motion is denied in its entirety, and defendants' motion is granted in part.  The Court dismisses part of plaintiffs' procedural-due-process claim as time-barred and part of plaintiffs' substantive-due-process claim as borderline frivolous.  The Court also declines to exercise supplemental jurisdiction over the parties' numerous disputes over the meaning of the 1992 variance, City regulations, and the building code, because those state-law disputes "substantially predominate[]" over the federal claims.  *See* 28 U.S.C. § 1367(c)(2) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction . . . .").

---

[1]Defendants did not file a formal motion for summary judgment, but in their response memorandum they ask for summary judgment under Fed. R. Civ. P. 56(f).

I.  BACKGROUND

Titan is in the animal-feed business.  As noted, John Zander is a Titan officer; his brother

Dan is Titan's president and owner.  Merwin Aff., Dec. 15, 2011 [ECF No. 15] Ex. AA; Kaardal

Decl., June 20, 2012 [ECF No. 68] Ex. 47 at 3.  In 1983, Titan purchased property in the City

with an eye toward expanding its business into products for human consumption.  D. Zander

Second Aff., Aug. 18, 2011 [ECF No. 67] ¶ 2; J. Zander Decl., June 20, 2012 [ECF No. 70] ¶ 9.

The property included a two-story processing and warehouse facility, a 55-foot silo, and a 75-foot

grain leg with a capacity of 2,000 bushels per hour.  D. Zander Second Aff. ¶ 6; J. Zander Decl.

¶ 10.  Titan refers to the preexisting silo as the "Chicago bin."[2]  J. Zander Decl. ¶ 10.

On April 27, 1992, Titan obtained a variance from the City to build four silos at a height

of 75 feet.  Kaardal Decl. Ex. 2 at 2-3.  The variance was necessary because the City's zoning

ordinance prohibited any structure over 35 feet in height.  Kozar Aff., July 11, 2012 [ECF

No. 75] Ex. 1 § 4(7)(A).  The Court will refer to this as the "1992 variance."  It should not be

confused with a variance that the City approved on November 30, 1992, which gave Titan

permission to extend the grain leg to 105 feet in height.[3]  J. Zander Decl. ¶ 13; Kaardal Decl.

Ex. 4 at 2.  There does not appear to be any dispute between the parties concerning this latter

variance (although it is mentioned repeatedly in plaintiffs' complaint and briefing).

---

[2]There is some suggestion in the record of a distinction between a "bin" and a "silo."  The parties have used the terms interchangeably, however, and therefore the Court will do likewise.

[3]The variance does not specifically mention the grain leg; instead, it describes a variance to build "an addition to [Titan's] bins . . . ."  Kaardal Decl. Ex. 4 at 2.  There appears to be no dispute that this is a reference to the grain leg.

Sometime during the next couple of years, Titan constructed a concrete foundation and one new silo as well as the 105-foot grain leg.  J. Zander Decl. ¶ 13; D. Zander Second Aff. ¶¶ 24, 26.  Titan refers to the new silo as the "Brock bin."  D. Zander Second Aff. ¶ 24.  Titan also made other improvements to the property, but did not build the other three silos for which it had obtained the 1992 variance.

In 1995, the City adopted a new zoning ordinance that contained a "lapse of variance" provision.  D. Zander Second Aff. Ex. 12 at 2; *id.* Ex. 13 § 15(4)(D).  Under this provision, a variance becomes null and void "[w]henever within one (1) year following the granting of a variance . . ., the work as permitted has not been completed or substantially completed . . . ."  D. Zander Second Aff. Ex. 13 § 15(4)(D)(2).

In May 2001, a storm damaged the Chicago bin, rendering Titan's plant inoperable.  J. Zander Decl. ¶ 17.  Titan sought to replace the Chicago bin, but was told by the City that a construction moratorium was in place pending potential changes to the City's zoning ordinance.  J. Zander Decl. ¶ 17; *see also* Kozar Aff. Exs. 4, 5.  At some point in September 2002, Titan submitted a variance request, apparently for the purpose of replacing the Chicago bin.  Kaardal Ex. 12 at 2.

Meanwhile, in October 2002, the City held public hearings on Ordinance 2002-10, a proposed new interim zoning ordinance for properties zoned commercial or industrial.  Kozar Aff. Ex. 6 at 3.  John Zander attended the first meeting and submitted written comments about the draft.  *Id.*  On November 12, 2002, the City adopted Ordinance 2002-10.  Kaardal Decl. Exs. 10, 11 at 2.  Ordinance 2002-10 eliminated the prohibition on buildings over 35 feet in commercial and industrial zones; instead, the new ordinance provided that such buildings would

be allowed through a Conditional Use Permit ("CUP").  Kaardal Decl. Ex. 10 § 14.2(H)(7).  In addition, the new ordinance added new building-performance standards and other requirements. Kaardal Decl Ex. 10.

In late January or early February 2003, the City returned Titan's September 2002 variance request with a letter stating that Titan should contact the City engineer, Tom McMahon, for an onsite review to determine what was necessary to comply with Ordinance 2002-10.  Kaardal Ex. 12 at 2.  In May 2003, Titan wrote a letter to McMahon about construction plans and stated that it would be submitting an application for a CUP because its proposed structures would be more than 35 feet tall.  Kozar Aff. Ex. 7.  A few days later, Titan submitted an application for a CUP to build two bins in excess of 35 feet.  Kaardal Decl. Ex. 13.  At some point after Titan submitted the CUP application, another storm damaged the Brock bin (that is, the bin that Titan had built pursuant to the 1992 variance).  J. Zander Decl. ¶ 18; Kaardal Decl. Ex. 15 at 2.

McMahon recommended that the CUP be granted insofar as it related to replacement of the Chicago bin (that is, the bin that was on the property when Titan purchased it and that was destroyed in the 2001 storm).  Kaardal Decl. Ex. 14.  At a June 30, 2003 meeting, the City Council discussed Titan's CUP application.  Kaardal Decl. Ex. 15 at 2.  The minutes for the meeting (which John Zander attended) reflect that at some point the discussion turned to Titan's 1992 variance.  *Id.* at 1-2.  City attorney Tom Neuville stated that the 1992 variance was no longer valid — i.e., that Titan would need a CUP to build a bin exceeding 35 feet.  *Id.* at 2.  Titan was also told that it would have to submit a separate CUP application for each bin.  *Id.* Eventually, the City voted to approve a CUP for the replacement of the Chicago bin.  *Id.* at 5.

In July 2003, Titan wrote a letter to McMahon, Neuville, and the City's mayor (Myron Malecha) asking about the status of its request for a building permit.  Kaardal Decl. Ex. 16.  In the letter, Titan expressed the view that it did not need a CUP to replace the Brock bin because the bin had been erected under the 1992 variance.  Titan asked to be informed in writing if the City disagreed with its position.  *Id.*  In response, Neuville wrote a letter dated July 10, 2003 stating that a CUP had been granted only to replace the Chicago bin, that a CUP had been denied with respect to replacing the Brock bin, and that if Titan submitted an application for another CUP, Titan would be required to comply with all of the performance standards in the City code. Kaardal Decl. Ex. 17.

In October 2003, Titan submitted three CUP applications for a "replacement structure" (apparently to replace the Brock bin) exceeding 35 feet, a "new structure" exceeding 35 feet, and "outdoor storage."  Kozar Aff. Ex. 9.  McMahon reviewed the applications and authored a report opining that Titan's submission was inadequate.  Kozar Aff. Ex. 10.  On October 16, 2003, the City held a public hearing on Titan's CUP applications.  (John Zander attended the hearing.) Later that month, the City approved a CUP authorizing construction of a replacement for the Brock bin exceeding 35 feet, subject to certain conditions, including the condition that Titan comply with the performance standards in the City code no later than May 1, 2004.  Kozar Aff. Ex. 12 at 3; *Id.* Ex. 11 at 2.  The City tabled Titan's remaining requests for CUPs authorizing a new structure and outdoor storage until Titan submitted complete development plans.  Kozar Aff. Ex. 12 at 3-4.

Approximately eight months later, in June 2004, the City granted Titan a CUP for two replacement bins, a new bin, and outdoor storage, again subject to certain conditions.  Kozar Aff.

Ex. 15.  The City issued an amended CUP for the same bins and for outdoor storage on

September 27, 2004 ("the 2004 CUP").  Kaardal Decl. Ex. 46.  The 2004 CUP, which was signed

and agreed to by John Zander, vacated and superseded all previously issued CUPs and building

permits relating to Titan's property.[4]  Kaardal Decl. Ex. 46 at 5.  In the 2004 CUP, Titan

acknowledged that the City was in the process of updating its zoning code and that its property

would be subject to the provisions of the updated code if any additional improvements or

expansion were considered.  Kaardal Decl. Ex. 46 at 4.  Titan also acknowledged that the CUP

was subject to annual review and that a violation of its terms and conditions could result in

revocation.  Kaardal Decl. Ex. 46 at 4.  Titan was represented by an attorney at the hearing at

which this CUP was discussed.  Kozar Aff. Ex. 19.

Around the time the City issued the original version of the 2004 CUP, the City adopted

Ordinance 2004-6, which amended the zoning code.  Kozar Aff. Ex. 17.  A few months later, in

November 2004, the City adopted Ordinance 2004-09, which appears to represent a

comprehensive overhaul of the City's zoning laws.  Kozar Aff. Ex. 18.  Both of these ordinances

continued to allow buildings over 35 feet as conditionally permitted uses.  Kozar Aff. Ex. 17

§ 1500.12(A)(5)(d), (B)(4)(d)(ii), (B)(6)(d); *id.* Ex. 18 § 1500.04 § 8(A).

In July 2005, the City granted a one-year extension of the 2004 CUP to September 27,

2006.  Merwin Aff. Ex. H.  For reasons that are not clear from the record, Titan did not build the

---

[4]It appears that, pursuant to the CUPs that were then in effect, the City issued building permits in November 2003 and later reissued those same permits in June 2004.  *See* Kozar Aff. Exs. 13, 16.  Oddly, the City's building official signed and dated the bottom of the permits using the date of November 6, 2007.  Kozar Aff. Exs. 13, 16.  The City contends, and plaintiffs apparently do not dispute, that this is merely a typographical error, that these permits were in fact issued in November 2003 and June 2004, and that they were therefore vacated by the September 2004 amended CUP.

bins, despite the one-year extension.[5]  Meanwhile, defendant John McCarthy became the City

Administrator in June 2006.  McCarthy Aff. ¶ 1, Dec. 15, 2011 [ECF No. 16].  A few months

later, John Zander was elected to the City Council and took office in early 2007.  McCarthy Aff.

¶ 11.

In early 2008, some City residents complained about items being stored on Titan's

property.  Kaardal Decl. Ex. 22; Merwin Aff. Ex. I at 10 ¶¶ 31-32.[6]  A City police officer issued a

written warning to John Zander.  Merwin Aff. Ex. I at 10 ¶ 33.  Later, to avoid a potential

conflict of interest (given John Zander's position as a City Council member), the City retained an

independent investigator to make recommendations about the allegations.  Kaardal Decl. Ex. 25

at 3; Merwin Aff. ¶ 10 & Exs. I, K.  Based on the investigator's recommendations, the City sent

Titan a notice of zoning violation dated June 11, 2008.  Merwin Aff. Ex. J.  Among other things,

the notice stated that the 2004 CUP to construct storage bins had expired in September 2006.  *Id.*

In July 2008, Titan appealed the notice of violation to the City Council (which functions

as the City's board of adjustment with the power to handle such appeals under state law).

Merwin Aff. Ex. K; Kozar Aff. Ex. 18 § 1500.20(4)(A); *see also* Minn. Stat. § 462.357, subd. 6.

Titan contended that the 2004 CUP had not expired because, within one year of the 2004 CUP

being issued, Titan had begun storing materials and equipment in the designated area pursuant to

the 2004 CUP.  Merwin Aff. Ex. L.  Titan also contended that it had met the conditions of the

_____

[5]Titan asserts that it "completed requirements related to the CUP, but unexpected circumstances delayed the process."  ECF No. 71 at 15.  To support this assertion, Titan cites the declaration of John Zander.  The declaration does not state that Titan completed requirements related to the CUP, however; instead, it merely states that "Titan did start planning related to the 2004 CUP, but unexpected circumstances delayed the process."  J. Zander Decl. ¶ 21.

[6]The pagination in this document restarts after the first page 6.

2004 CUP within one year of its issuance.  Merwin Aff. Ex. L.  According to Titan, the City

eventually agreed that the 2004 CUP had not, in fact, expired, and the City said that McCarthy

would be contacting Titan to discuss the procedure for obtaining a building permit.  Merwin Aff.

Ex. L at 7.

Eventually, in September 2008, the City agreed to withdraw the notice of violation and

issue an amended CUP ("the 2008 CUP").  Kaardal Decl. Ex. 47 at 2.  In return, Titan agreed to

withdraw its appeal.  Kaardal Decl. Ex. 47 at 2.  The 2008 CUP permitted the construction of

three storage bins in excess of 35 feet and outdoor storage of parts and equipment.  Kaardal Decl.

Ex. 47 at 2.  The 2008 CUP required Titan to apply for building permits within 90 days, which

would be approved within one month if the proposed construction was in compliance with the

current building code.  Kaardal Decl. Ex. 47 at 2.  The 2008 CUP required construction to be

completed within six months of the issuance of the building permits.  Kaardal Decl. Ex. 47 at 3.

The 2008 CUP also stated that, except as amended, all terms and conditions of the 2004 CUP

remained in effect.  Kaardal Decl. Ex. 47 at 2.  Titan signed an statement acknowledging that it

agreed to all of the terms and conditions of the 2008 CUP.  Kaardal Decl. Ex. 47 at 3.

Titan submitted a building-permit application (dated September 30, 2008) to pour

foundations and erect silos.  Merwin Aff. Ex. N.  The City's building official, Benny Svien,

rejected the application as incomplete and identified the deficiencies that Titan needed to

address.  Merwin Aff. Ex. O.  McMahon, the City engineer, also sent Titan a letter identifying

additional materials that had to be submitted to complete the application.  Merwin Aff. Ex. P.  In

a letter dated February 5, 2010, Titan (through counsel) responded that it had gathered the

additional information that the City had requested.  Merwin Aff. Ex. Q.  Before submitting the

information, however, Titan wanted the City to clarify whether the new silos would be subject to certain code requirements, such as the installation of sprinklers.[7]  Merwin Aff. Ex. Q at 4.

At a March 29, 2010 City Council meeting, McCarthy reported that he had spoken with Dan Zander about the requirements for a building permit.  Merwin Aff. Ex. X at 2.  The City Council extended the time for Titan to submit a complete building-permit application to April 21, 2010.  Merwin Aff. Ex. X at 2.  (Apparently, the deadline was later extended to sometime in June.  Merwin Aff. Ex. Z at 2.)  For his part, Dan Zander told the Council that he would not allow City inspectors on Titan's property.  Merwin Aff. Ex. X at 3.  The mayor asked Dan Zander to put his disagreements relating to the CUP in writing.[8]  Merwin Aff. Ex. X at 3.

One aspect of the parties' dispute centered on the City's interpretation of a building-code requirement that the drainage system be designed so that post-development runoff would not exceed predevelopment runoff.  Kaardal Decl. Ex. 33 at 3; Kaardal Decl. Ex. 8 § 3(3)(B).  Titan contended that "predevelopment" runoff refers to the amount of runoff before the "development" that would be authorized by the building permit — that is, the amount of runoff that is *now* present at the site.  Kaardal Decl. Ex. 33 at 3, Merwin Aff. Ex. AA.  The City contended that, at

---

[7]For anyone not well-versed in the intricacies of zoning and land-use law, Titan's letter is difficult to interpret.  The City characterizes the letter as a request that Titan be excused from complying with current building-code requirements.  ECF No. 74 at 11-12.  So far as the Court can tell, this characterization is essentially correct, and Titan apparently does not dispute it.

[8]It appears that the parties may dispute whether the 2004 CUP and 2008 CUP are separate CUPs or instead constitute a single CUP that was amended several times.  In light of this apparent dispute, the Court has, where possible, distinguished between them.  It should be noted, though, that many contemporaneous documents appear to treat the 2004 CUP and the 2008 CUP as a single CUP.  In distinguishing between the CUPs, the Court does not intend to take a position on whether they constituted a single CUP or, in particular, on whether a June 28, 2010 City Council resolution effectively terminated both of them.

least with respect to a property (like Titan's) that had no existing stormwater-management system, "predevelopment" runoff refers to the amount of runoff before there was *any* "development" at the site — that is, the amount of runoff that was present when the site was still in its natural state.  Kaardal Decl. Ex. 34.

At the May 24, 2010 City Council meeting, the Council passed a motion calling for a public hearing to revoke Titan's CUP unless Titan was in complete compliance with the CUP by sometime in June.  Merwin Aff. Ex. Z at 3.  (The record is somewhat confusing, but it appears that the ultimate deadline was June 14.  Merwin Aff. Ex. DD at 3 ¶ 19.)  John and Dan Zander were both at the May 24 meeting, as was Titan's attorney, Erick Kaardal.  Merwin Aff. Ex. Z at 1.  Dan Zander told the Council that the conditions in the CUP were unenforceable and illegal, that he would not allow the City to inspect his property for building-code compliance, and that he would not comply with the CUP.  Merwin Aff. Ex. Z at 2.  A week later, Dan Zander requested that the dispute over the meaning of "predevelopment" be submitted to the Planning Commission for review pursuant to city ordinance.  Merwin Aff. Ex. AA.  Notably, in the letter, Dan Zander admitted that he needed a CUP to erect silos in excess of 35 feet.  Merwin Aff. Ex. AA.  It is not clear how the City responded to this letter, but its position appears to be that Titan is not entitled to Planning Commission review of any issue until Titan submits a complete application for a building permit.

On June 14, 2010, the City Council held a public hearing to revoke Titan's CUP.  Merwin Aff. Ex. DD.[9]  John and Dan Zander were present along with Kaardal (Titan's counsel).  Merwin

---

[9]Exhibit DD appears to contain both the June 14, 2010 City Council minutes and an incomplete copy of the June 28, 2010 City Council resolution.  The June 28 resolution begins on
(continued...)

Aff. Ex. DD at 1.  At the hearing, McCarthy stated that Titan had not complied with three conditions of the CUP: (1) it had not submitted complete building plans; (2) it had stored items that were subject to rust; and (3) it had not submitted a complete site plan, including a stormwater-control plan.  Merwin Aff. Ex. DD at 2.  The City Council voted to direct the City attorney to prepare a resolution to revoke Titan's CUP.  Merwin Aff. Ex. DD at 5.  On June 28, 2010, the City Council adopted the following resolution:  "The Conditional Use Permit for Titan Supply Company for the construction of three bins/tanks in excess of thirty-five feet and for outdoor storage as further described by Resolution 2008-39 is hereby terminated and revoked."  Kaardal Decl. Ex. 48 at 5.

Two days later, Titan notified the City that it intended to apply for a building permit pursuant to the *1992* variance.  Kaardal Decl. Ex. 28.  Titan asked the City to first clarify whether it would recognize the 1992 variance as remaining in effect.  Kaardal Decl. Ex. 28.  The City responded, via a letter from the City attorney, that the 1992 variance was null and void.  Kaardal Decl. Ex. 29.  Shortly thereafter, plaintiffs filed their initial complaint in this case in state court.[10] ECF No. 74 at 13 n.4.

Late in 2010, Titan applied for and was granted a building permit to pour a cement foundation for the silos.  D. Zander Second Aff. ¶¶ 55, 57 & Ex. 17.  The building permit states that it is for the foundation only and that any structure to be placed on the foundation requires

---

[9](...continued)
the second page of the exhibit.  Citations to specific pages of Exhibit DD are to the June 14 minutes, not to the pages containing the resolution (which the Court assumes were included inadvertently).

[10]It appears that Titan was the only original plaintiff and that John Zander's claims were added later.  ECF No. 5 at 10.

another permit.  D. Zander Second Aff. Ex. 17 at 1.  The issuance of this building permit was

apparently pursuant to the parties' attempts to settle their differences.  *See* Kozar Aff. Ex. 21.  In

October 2011, after plaintiffs amended their complaint to add federal claims, defendants removed

this case to federal court.  A settlement conference was held on April 11, 2012.  ECF No. 34.  On

April 23, 2012, the City Council approved Resolution 2012-19, which states that "if Titan Supply

Company submits a completed building permit application for up to 4 grain bins/silos not

exceeding 75 feet in height, and the application complies with all other requirements of state

building codes and city ordinances in effect at the time of the application, city staff should treat

the application as allowed by the zoning regulations."  Kaardal Decl. Exs. 38, 40.  Titan applied

for a building permit in May 2012, Kaardal Decl. Ex. 43 at 6, and a month later the City notified

Titan that its application was not complete, Kaardal Decl. Ex. 45.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome

of the lawsuit under the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Id.*  "The evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

*B.  Plaintiffs' Claims*

Plaintiffs bring the following claims:  (1) the City's revocation of Titan's 2008 CUP was

unreasonable, arbitrary, capricious, and contrary to law (Count I); (2) the City violated Titan's

procedural-due-process rights by revoking the 1992 variance without notice and a hearing

(Count II);[11] (3) the City violated Titan's procedural-due-process rights by revoking the 2004

CUP without notice and a hearing (Count III); (4) the City's treatment of the 1992 variance and

the 2004 CUP violates Titan's right to substantive due process (Count IV); (5) the City and

McCarthy have acted negligently in denying Titan building permits under the 1992 variance and

the 2004 CUP (Count V); (6) the City and McCarthy have caused citations and complaints to be

made against John Zander in retaliation for Zander's criticisms of the City and McCarthy

(Count VIII); and (7) a claim for declaratory judgment that Titan is entitled to erect silos under

the 1992 variance and has a right to outdoor storage (Count IX).  (For some reason, the second

amended complaint does not contain any counts designated VI or VII.)

Plaintiffs' briefing in support of their summary-judgment motion is difficult to follow,

leaving the basis of plaintiffs' summary-judgment motion somewhat unclear.  Plaintiffs do not

seem to identify any claims on which they seek summary judgment, but instead state that they

seek summary judgment on "two interrelated legal issues":  (1) whether the 1992 variance is a

property right, and (2) whether the 1992 variance exempts Titan only from height restrictions or

instead from all City ordinances and all provisions of the building code.  ECF No. 71 at 1.  But

---

[11]Count II, and Titan's briefing, repeatedly mentions the November 1992 grain-leg variance.  As noted above, though, there does not appear to be any dispute between the parties concerning this variance.  The Court therefore does not address it.

plaintiffs also seek a permanent injunction in connection with their motion.  Obviously, to obtain

a permanent injunction, plaintiffs would have to prevail on at least one of their claims.

As best as the Court can tell, plaintiffs are seeking summary judgment with respect to

Count II, Count IV as it relates to the 1992 variance, and Count IX as it relates to the 1992

variance.[12]  As the Court explained at oral argument, however, it does not intend to exercise

supplemental jurisdiction over plaintiffs' state-law claims.  Despite the aggressive attempts by

plaintiffs to turn this litigation into a federal civil-rights action, this case is, at bottom, a garden-

variety building-code dispute — no different from the countless building-code disputes that are

resolved on a daily basis by state courts (and that are almost never resolved by federal courts).

The Eighth Circuit has been clear that "[a] federal court . . . 'should not . . . sit as a zoning board

of appeals.'"  *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir.

1992) (quoting *Village of Belle Terre v. Boraas*, 416 U.S. 1, 13 (1974) (Marshall, J., dissenting)).

Under 28 U.S.C. § 1367(c)(2), this Court is authorized to "decline to exercise supplemental

jurisdiction over a claim . . . if . . . the claim substantially predominates over the claim or claims

over which the district court has original jurisdiction."  Barring an unforeseen development, the

Court intends to exercise its discretion under § 1367(c)(2) and remand the state-law claims to

state court after the federal claims have been adjudicated.  *See Oneida Indian Nation of N.Y. v.

Madison Cnty.*, 665 F.3d 408, 439 (2d Cir. 2011) ("'Once it appears that a state claim constitutes

the real body of a case, to which the federal claim is only an appendage, the state claim may

---

[12]For their part, defendants request judgment in their favor on these claims as well as on
Count V, the negligence count.  Neither side says anything substantive about the negligence
claim, however, and the Court declines to address it — both because it was not adequately
briefed and because the Court does not intend to exercise supplemental jurisdiction over any of
plaintiffs' state-law claims.

fairly be dismissed.'" (quoting *United Mines Workers of Am. v. Gibbs*, 383 U.S. 715, 727

(1966)).  The Court will therefore address only Counts II and IV.

### C.  Substantive Due Process (Count IV)

Titan claims that the City's actions with respect to the 1992 variance violated its right to

substantive due process.  To prove a violation of substantive due process, Titan must first

establish that it has a right under the Fourteenth Amendment and that the City deprived it of that

right.  *See Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010).  For purposes of

Titan's due-process claims, the Court will assume that Titan is correct in claiming that the 1992

variance is a property right to which the Fourteenth Amendment's Due Process Clause applies.

Titan takes the rather remarkable position that, when the City gave it a variance from a

35-foot height restriction in 1992, the City also gave it a "variance" from each and every City

ordinance and each and every building-code provision that might otherwise apply.  Titan further

claims that this universal exemption from all ordinances and building-code provisions is eternal.

At oral argument, the Court pointed out that Titan's position is inconsistent with its statements

and actions over the past 20 years.  On multiple occasions, Titan has implicitly or explicitly

acknowledged that, at a minimum, it needs to secure a building permit before building a silo —

something that Titan would not need to do if it enjoyed the universal and eternal exemption now

claimed by its attorney.  At oral argument, the Court was unsuccessful in getting Titan's counsel

to explain how Titan could simultaneously (1) be exempt from all City regulations, including

those requiring Titan to get a building permit and (2) be required by City regulations to get a

building permit.  *See* Hr'g Tr. 9-15, Aug. 1, 2012 [ECF No. 97].  Titan's position thus remains

incoherent.

In any event, the Eighth Circuit takes a "a restrictive view of when land use planning decisions by local government agencies violate an aggrieved party's substantive due process rights." *Bituminous Materials, Inc. v. Rice Cnty.*, 126 F.3d 1068, 1070 (8th Cir. 1997).   It is not enough to prove that the government action in question is arbitrary, capricious, or in violation of state law.  *Id.*  "[E]ven allegations of bad faith enforcement of an invalid zoning ordinance do not, without more, state a substantive due process claim."  *Id.*; *see Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104-05 (8th Cir. 1992) (rejecting a substantive-due-process challenge in a zoning dispute where the zoning ordinance had been adopted in violation of state law).  Instead, the plaintiff must prove that the challenged action was "truly irrational," *Bituminous Materials, Inc.*, 126 F.3d at 1070 — something as extreme as applying zoning ordinances only to persons whose names begin with a letter in the first half of the alphabet, *Chesterfield Development Corp.*, 963 F.2d at 1104.  The action must be "so egregious or extraordinary as to shock the conscience."  *Koscielski v. City of Minneapolis*, 435 F.3d 898, 902 (8th Cir. 2006).

The City might have wrongly interpreted the law, but its position is far from "truly irrational," and its actions do not come close to "shock[ing] the conscience."   The City has put forth arguments ranging from colorable to compelling that (1) the 1992 variance only excused Titan from the height restriction and did not give Titan a right to build silos without complying with any other regulation; (2) the 1992 variance lapsed under a 1995 amendment to the City code that required variances to be used within one year; and (3) any new construction must comply with the current zoning ordinance because the silos were later damaged and not rebuilt within one year.  Whether or not the City is ultimately proven correct on these points, the City's position

certainly cannot be characterized as truly irrational or conscience-shocking.[13]  *See Rozman v. City of Columbia Heights*, 268 F.3d 588, 593 (8th Cir. 2001) (en banc) (per curiam) ("A misreading of an ordinance and its consequent violation of state law do not give rise to an action for violation of substantive due process.").

Finally, plaintiffs conclusorily argue that the City has retaliated against them for resisting the City's illegal behavior.  ECF No. 71 at 23.  While "there may be cases where land use decisions are so corrupted by the personal motives of local government officials that due process rights are implicated," a plaintiff cannot survive summary judgment on a substantive-due-process claim merely by showing that "a land use planning decisionmaker does not like the plaintiff." *Bituminous Materials, Inc.*, 126 F.3d at 1071.  Without question, there is evidence in the record of personal animosity between the Zanders and McCarthy.  But the evidence in the record does not demonstrate a process "so corrupted by the personal motives of local government officials that due process rights are implicated."  Since at least 2003 — years *before* McCarthy became the City Administrator — the City has consistently taken the position that Titan must obtain a CUP and comply with current zoning and building-code requirements to build its silos.  Moreover, the City has on multiple occasions given plaintiffs permission to build silos exceeding 35 feet — again, conditioned only on the eminently reasonable requirement that plaintiffs comply with other city regulations and the building code.  Nothing in the record suggests that the City's position — in 2003 or at any time since 2003 — is the product of personal animosity toward

---

[13]Although the Eighth Circuit has applied the "shock the conscience" test in land-use cases, *see Koscielski*, 453 F.3d at 902, it has more recently indicated that it may be more appropriate to apply only the "truly irrational" test in such cases (assuming that there is a difference), *see Snaza v. City of St. Paul*, 548 F.3d 1178, 1183 (8th Cir. 2008).  In any event, plaintiffs cannot meet the standard because the City's actions were not "truly irrational."

plaintiffs by City officials.

The Court therefore grants defendants' request for summary judgment on Titan's substantive-due-process claim as it relates to the 1992 variance.

### D.  Procedural Due Process (Count II)

Defendants argue that Count II — Titan's procedural-due-process claim relating to the 1992 variance — is barred by the statute of limitations.  The Court agrees.

Claims under § 1983 are governed by the analogous state statute of limitations.  *Baker v. Chisom*, 501 F.3d 920, 922 (8th Cir. 2007).  In Minnesota, the six-year statute of limitations for personal-injury actions applies to such claims.  *Johnson v. Mott*, 376 Fed. Appx. 641, 641-42 (8th Cir. 2010) (per curiam); *see also* Minn. Stat. § 541.05, subd. 1(5).  Defendants contend that, because plaintiffs first brought their § 1983 claims on October 3, 2011 (when they served their second amended complaint), any § 1983 claims that accrued before October 3, 2005 are barred by the statute of limitations.[14]  Plaintiffs' position on the relevant date for measuring whether their claims are timely is not clear.  As discussed below, however, the Court concludes that Count II accrued no later than July 10, 2003.  Plaintiffs do not contend — and the record contains no evidence — that plaintiffs commenced this action within six years after that date, and thus the Court concludes that Count II is time-barred.

The accrual date of a § 1983 claim is a question of federal law.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Under federal law, a § 1983 claim accrues when the plaintiff has a

---

[14]As noted earlier, this action originated in state court.  Under Minnesota law, a civil action is commenced when the summons is served.  *Johnson v. Carroll*, 658 F.3d 819, 828-29 (8th Cir. 2011).  The second amended complaint and the accompanying summons are dated October 3, 2011, and defendants' former attorney has asserted that, to the best of his knowledge, they were served on that date.  ECF No. 1, at ¶ 2.

complete and present cause of action — that is, when the plaintiff can file suit and obtain relief. *Id.*  In this case, Titan's procedural-due-process claim relating to the 1992 variance accrued no later than July 10, 2003.  On that date, in response to a letter from Titan asserting that Titan did not need to apply for a CUP because it had a variance, the City attorney wrote a letter to Titan on behalf of the City stating that Titan had to apply for a CUP to build a second bin in excess of the 35-foot-height restriction and that, once Titan applied for a second CUP, it would "be required to comply with all of the performance standards set forth in Section 4, subsection 14 of the Dundas Zoning Code (Chapter 1500)."  *See* Kaardal Exs. 16, 17.

This statement caused the deprivation on which Titan's procedural-due-process claim is premised.  Again, according to Titan, the 1992 variance gave Titan the right to build its silos without getting a CUP or complying with other aspects of the City's ordinances and building code.  By telling Titan that it had to obtain a CUP and comply with other City regulations in order to build a second silo, the July 10, 2003 letter clearly denied the existence of any such right.  Any procedural defect in the City's denial of the right must necessarily have occurred on or before July 10, 2003; the City's later conduct simply reflects this earlier denial and does not constitute a new or continuing violation of Titan's procedural-due-process rights.  *See Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 521 n.5 (6th Cir. 1997) (plaintiff's procedural-due-process claim was time-barred because "[a]ny procedural defects necessarily occurred prior to or concurrently with" the enactment of the resolution that deprived plaintiff of its property) (cited in *Montin v. Estate of Johnson*, 636 F.3d 409, 416 (8th Cir. 2011)).[15]

---

[15]Whether the continuing-violations doctrine would preserve Titan's claim may be a question of state law.  *See Hardin v. Straub*, 490 U.S. 536, 539 (1989) ("the chronological length
(continued...)

Titan argues that its claim did not accrue in 2003 because McCarthy, in his capacity as a Fed. R. Civ. P. 30(b)(6) deponent for the City, testified that the City has never officially revoked Titan's 1992 variance and that the City attorney's statements were merely his "opinions."  On the undisputed facts of this case, however, no reasonable jury could agree with McCarthy.  There is absolutely no evidence that the City attorney was doing anything other than communicating the *City's* position pursuant to his authority as the *City's* legal representative when he sent the July 10, 2003 letter.  To the contrary, since the July 10, 2003 letter was sent, the statements and actions of the City and its elected and appointed officials have at all times been consistent with the position stated in that letter — that is, the position that Titan had to obtain a CUP in order to build silos.  Indeed, during a City Council meeting held shortly *before* the July 10, 2003 letter was sent, Titan was informed, in the presence of the mayor, the City Council, and multiple other City officials, that Titan would have to submit a separate CUP for each silo that it intended to construct.  Kaardal Decl. Ex. 15 at 2.  At the same meeting, the City attorney — obviously acting in his capacity as the City's legal representative — stated that Titan's 1992 variance was invalid. Kaardal Decl. Ex. 15 at 2.

Given these undisputed facts, a reasonable jury would be compelled to conclude that the City attorney's statements in the July 10, 2003 letter expressed the official position of the City.

---

[15](...continued)
of the limitation period is interrelated with provisions regarding tolling [and] revival, and questions of application" and therefore courts "should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue" (citation and quotations omitted)).  The parties have not briefed whether or how state law applies to this question, however, and in any event the Court has not found any Minnesota case that analyzes the continuing-violations doctrine in the context of a procedural-due-process claim, much less any Minnesota case that is at odds with the Court's analysis.

Put another way, if the shoe were on the other foot, it would be extremely difficult to hold that

the City would *not* be liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978),

for depriving Titan of a property right when City officials knowingly permitted the City attorney

to tell Titan in a letter that it was required to apply for a CUP and when City officials sat idly by

at a City Council meeting while Titan was told that its 1992 variance was invalid and that it had

to apply for a CUP. *Cf. Monell*, 436 U.S. at 690-91 ("local governments, like every other § 1983

'person,' by the very terms of the statute, may be sued for constitutional deprivations visited

pursuant to governmental 'custom' even though such a custom has not received formal approval

through the body's official decisionmaking channels").  McCarthy is not a lawyer, and his

Rule 30(b)(6) testimony about the legal effect of the City attorney's July 10, 2003 letter is

mistaken.

Finally, it is worth noting that, if the Court were to agree with Titan's view of McCarthy's

testimony, then Titan would have argued itself right out of its procedural-due-process claim.  The

logical implication of Titan's argument that the City has never revoked the 1992 variance is that

the City has never deprived Titan of its property right in the 1992 variance.  Titan tries to get

around this problem by arguing that it was deprived of this property right by *other* City actions,

such as the revocation of the 2008 CUP and the April 2012 resolution.  But the 2008 CUP

revocation (as Titan repeatedly argues) had nothing to do with the 1992 variance.  Likewise, the

April 2012 resolution does not purport to revoke the 1992 variance (although it does require

Titan to comply with current zoning regulations).  Even if this could be considered the formal

City action that derogates Titan's variance, however, the April 2012 resolution obviously cannot

be the basis of Titan's due-process claim because it occurred *after* Titan amended its complaint

to add that claim.  More importantly, the April 2012 resolution is merely a continuation of the City's long-held position that Titan must comply with current zoning regulations; the only change is that the resolution excused Titan from obtaining a CUP, which, if anything, implicitly concedes that the 1992 variance is *valid*.

In sum, beginning no later than July 10, 2003 (and continuing until at least April 2012), the City has consistently denied Titan the right to build its silos without a CUP.  Moreover, beginning no later than July 10, 2003, the City has consistently denied Titan the right to build its silos without complying with all City ordinances and all provisions of the building code.  Therefore, Count II of plaintiffs' second amended complaint is time-barred.  Defendants' request for summary judgment on that claim is granted.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.    Plaintiffs' motion for summary judgment [ECF No. 64] is DENIED.

2.    Defendants' request for summary judgment [ECF No. 74, at 2 n.1] is GRANTED IN PART and DENIED IN PART as follows:

   a.    Defendants' request is GRANTED as to Count II.  That claim is DISMISSED WITH PREJUDICE AND ON THE MERITS.

   b.    Defendants' request is GRANTED as to Count IV, insofar as Count IV concerns the 1992 variance.  That claim is DISMISSED WITH PREJUDICE AND ON THE MERITS.

   c.    Defendants' request is DENIED in all other respects.

-23-

3.     Plaintiffs' objections [ECF Nos. 98, 99] are OVERRULED, and Judge Leung's

orders [ECF Nos. 90, 91] are AFFIRMED.

Dated:  November _20_, 2012                    s/Patrick J. Schiltz
                                               Patrick J. Schiltz
                                               United States District Judge